IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| JEFFERY BERNARD AKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-031 |
| | ) | |
| TAMALA BROWN, Warden;, | ) | |
| KELLY BOYETT, Lieutenant; and | ) | |
| LISA HOWARD, Nurse, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Montgomery State Prison ("MSP") in Mt. Vernon, Georgia, is proceeding *pro se* and has paid the $402.00 filing fee in the case brought pursuant to 42 U.S.C. § 1983. Defendants Brown and Boyett,[1] (hereinafter "Defendants"), filed a pre-answer motion to dismiss, (doc. no. 10), which Plaintiff opposes, (doc. no. 13). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED**.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff originally filed this case in the Northern District of Georgia. (See doc. no. 1.) United States Magistrate Judge John K. Larkins III, transferred the case to the Southern District

---

[1]The record does not reflect Plaintiff has effected service of process on Defendant Howard.

of Georgia on April 12, 2022.  (Doc. no. 2.)  Plaintiff paid the $402.00 filing fee on April 21, 2022, and on April 22, 2022, the Court provided Plaintiff with instructions regarding the development and progression of this case, including directions on effecting service.  (See doc. no. 6.)  Defendants Brown and Boyett returned waivers of personal service, (doc. nos. 7, 8), and in lieu of an answer, they file a pre-answer motion to dismiss.  (Doc. no. 10.)  Defendants also filed a motion to stay discovery pending resolution of the motion to dismiss, and the Court granted that stay on June 21, 2022.  (Doc. nos. 11, 15.)

In their motion to dismiss, Defendants argue the case should be dismissed in its entirety because Plaintiff failed to properly exhaust his administrative remedies prior to filing his complaint.  (Doc. no. 10-1, pp. 2-7.)  Defendants further argue Plaintiff fails to state a claim for relief against either of them because he is improperly attempting to hold them liable based solely on their supervisory positions.  (See id. at 7-8.)  Plaintiff does not contest either ground for dismissal, arguing only that Defendant Howard "really did" slam the door on Plaintiff's fingers and did not offer him any medical care for his injury.[2]  (Doc. no. 13.)

**B.**     **Complaint Allegations**

In his complaint dated March 8, 2022, Plaintiff alleges Defendant Howard, a nurse at MSP, slammed a cell door shut on his hand on January 19, 2022, and refused to render aid when she saw Plaintiff's cut and bleeding fingers.  (Doc. no. 1, pp. 3-5.)  Plaintiff's only mention of Defendants Brown and Boyett is that they served as the warden and lieutenant of

---

[2]Plaintiff did not sign his opposition, and he did not respond to the deficiency notice that directed him to do so, (doc. nos. 13, 14).  Nevertheless, in an abundance of caution the Court has considered the information contained in the opposition, which arrived at the Clerk of Court in an envelope bearing Plaintiff's name and prison address, (doc. no. 13, p. 2).

the shift, respectively, when the injury occurred.  (Id. at 3.)  Plaintiff seeks an unspecified amount of monetary damages.  (Id. at 4.)

### C.     Plaintiff's Relevant Grievance History

In support of the motion to dismiss, Defendants produced the declaration of Tammy Stankowitz, Grievance Coordinator at MSP since March of 2022.  (See doc. no. 10-2, Stankowitz Decl. ¶ 2.)   Prior to working at MSP, Ms. Stankowitz was the Grievance Coordinator at Rogers State Prison, another prison within the Georgia Department of Corrections ("GDC").  (Id.)  Ms. Stankowitz oversees the grievance procedure at MSP and supervises MSP counselors to make sure grievance procedures are properly followed.  (Id. ¶ 3.)  Her "responsibilities include, but are not limited to, maintaining a log of all offender grievances, ensuring that offenders received grievance forms when requested, and ensuring that grievance procedures are conducted in accordance with the GDC Standard Operating Procedures ('SOP')."  (Id.)  Ms. Stankowitz is familiar with the GDC's grievance process, including the applicable GDC SOP 227.02, in effect since May 10, 2019, which governs the events in this case.  (Id. ¶ 5.)

Ms. Stankowitz has identified one grievance Plaintiff filed related to the events at issue in this lawsuit, Grievance Number 00820892 ("the Grievance").  (Id. ¶¶ 21, 22 & Ex. B.)  In the Grievance, Plaintiff alleged Defendant Howard slammed his hand in the door on January 19, 2022, but he did not mention either Defendant Brown or Defendant Boyett in his description of the incident.  (Id. ¶ 21 & Ex. B.)  The Grievance was denied on February 28, 2022, and Plaintiff filed an appeal that same day.  (Id. ¶ 21 & Ex. C.)  As of the date Ms. Stankowitz signed her declaration, May 25, 2022, that appeal was still pending.  (Id. ¶ 21.)

The copy of the JPay summary of Plaintiff's Grievance attached to Ms. Stankowitz's declaration is presented as it is maintained in the GDC computer program SCRIBE. (Id.)

## II.    DISCUSSION

### A.    The Legal Framework for Determining Exhaustion

Where, as here, a defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.  First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted.  Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)).  If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that the plaintiff has failed to exhaust his administrative remedies.  Id.  Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted.  Id.  Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit.  Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate.  See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)).  Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

The United States Supreme Court has identified three circumstances where administrative remedies are not available and therefore exhaustion "does not come into play": (1) prison officials refuse to follow established grievance policy; (2) the administrative process is so confusing or vague as to be "essentially unknowable"; and (3) prison officials prevent

filing grievances through "machination, misrepresentation or intimidation." <u>Ross v. Blake</u>, 578 U.S. 632, 643-44 (2016).  Here, Plaintiff makes no allegation or arguments that any of these three scenarios apply to his situation.  Indeed, he states in his complaint he filed a grievance and an appeal.  (Doc. no. 1, p. 2.)

Furthermore, the PLRA also "requires proper exhaustion." <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  <u>Id.</u> at 90 (internal quotation omitted).  If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement.  <u>Johnson</u>, 418 F.3d at 1159.

### B.     The Administrative Grievance Procedure

As part of the declaration of Ms. Stankowitz, Defendants have provided a copy and explanation of the applicable Statewide Grievance Procedure, Policy Number ("PN") 227.02, which became effective May 10, 2019.  (Stankowitz Decl. ¶¶ 5-19 & Ex. A.)  The grievance procedure has two steps:  (1) Original Grievance, and (2) Central Office Appeal.  PN 227.02 § IV(C).  The administrative remedies procedure commences with filing an Original Grievance via the Kiosk/Tablet or with a counselor.  <u>Id.</u> § IV(C)(1)(c) & (d).  The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance.  <u>Id.</u> § IV(C)(1)(b).  The timeliness requirements of the administrative process may be waived upon a showing of good cause.  <u>Id.</u>  The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it.  <u>Id.</u> § IV(C)(1)(e)(i).  The grievance may be rejected, *inter*

*alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident.  Id.  § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted.  Id. § IV(C)(1)(f)(v).  If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal.  Id. § IV(C)(1)(e)(v) & (c)(1)(f)(viii); § IV(C)(2).  The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a central office appeal, but this time limit may be waived for good cause.  Id. § IV(C)(2)(b).  The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal.  Id. § (C)(2)(e).  If the appeal is denied, this completes the grievance procedure.  (Stankowitz Decl. ¶ 19.)  If the central office appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance.  PN 227.02, § IV(C)(2)(g).  The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal.  Id.

### C.    Plaintiff's Failure to Exhaust

In his complaint signed on March 8, 2022, Plaintiff alleges Defendant Howard slammed a cell door shut on his hand on January 19, 2022, and refused to render aid when she saw Plaintiff's cut and bleeding fingers.  (Doc. no. 1, pp. 3-5.)  Plaintiff acknowledges there is a grievance procedure at MSP, and indeed, he states he filed the Grievance and an appeal.  (Id.

at 2.)  He does not provide any information about the outcome of his appeal.  Under step one of <u>Turner</u>, the Court takes Plaintiff's version of the facts as true, concludes dismissal is not appropriate because of the uncertainty about the appeal outcome, and moves to step two.  <u>See</u> <u>Turner</u>, 541 F.3d at 1082.

 Under the second <u>Turner</u> step, the Court must make specific findings to resolve the factual disputes regarding exhaustion, and Defendants have the burden to prove Plaintiff did not exhaust administrative remedies.   <u>See</u> <u>Maldonado v. Baker Cnty. Sheriff's Office</u>, 23 F.4th 1299, 1307 (11th Cir. 2022).  Here, the factual dispute is straight-forward:  Did Plaintiff file his lawsuit prior to receiving a response to the appeal he admittedly filed?  Plaintiff states he filed an appeal of the denial of his Grievance, (doc. no. 1, p. 2), but he does not provide any information one way or the other about the outcome of his appeal.  (<u>Id.</u>; doc. no. 13.)  Defendants say the Grievance filed did not mention any actions by either of them, but even if the Grievance is considered to apply to them, Plaintiff filed this lawsuit while the central office appeal was still pending.  (Doc. no. 10-1, pp. 6-7.)  As explained in detail below, the Court concludes Defendants have carried the burden to show Plaintiff did not exhaust his administrative remedies.

Defendants have shown through the Stankowitz Declaration that Plaintiff filed one grievance related the events forming the basis of this lawsuit.  (Stankowitz Decl. ¶¶ 21, 22.)  Defendants have also shown Plaintiff filed an appeal on February 28, 2022, of the denial of his Grievance, and that appeal was pending as of May 25, 2022.  (<u>Id.</u> ¶ 21.)  Plaintiff signed his complaint on March 8, 2022, prior to resolution of the appeal of the warden's denial of the Grievance.  The 120 days permitted for ruling on the appeal did not expire until the end of June of 2022.

When faced with the Stankowitz Declaration signed under penalty of perjury, Plaintiff's unsworn and unsigned response asserts only that the case should proceed because the events he described regarding the injury to his hand "really did occur." (Doc. no. 13.) Plaintiff does not dispute, indeed does not address, any of Defendants' factual information regarding exhaustion and the availability of an administrative remedy that he simply did not allow to run its course prior to filing this lawsuit. Thus, Plaintiff did not exhaust the two-part grievance procedure. The exhaustion requirement is not satisfied if a prisoner fails to complete the administrative process or falls short of compliance with procedural rules. Johnson, 418 F.3d at 1159.

Therefore, based on the above, the Court finds Defendants have met their burden to show Plaintiff did not satisfy the PLRA's exhaustion requirement prior to filing this lawsuit. Because Plaintiff did not exhaust his administrative remedies with respect to his claims forming the basis of this lawsuit prior to initiating this case, the motion to dismiss should be granted. Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (per curiam) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261. Because the motion should be granted based on Plaintiff's failure to exhaust, the Court need not address Defendants' remaining arguments for dismissal.

Moreover, although the record reflects Plaintiff has not effected service of process on Defendant Howard, because the record before the Court establishes Plaintiff filed this lawsuit prior to exhausting his administrative remedies, the case against her should also be dismissed without prejudice. See Marroquin v. Core Civic, Inc., Civ. Act. No. 5:18-cv-86, 2019 WL 3047623, at *5 & n.7 (S.D. Ga. July 11, 2019) (collecting cases for proposition plaintiff who

9

has case dismissed without prejudice for failure to exhaust may later bring second lawsuit after administrative remedies fully exhausted), *adopted by* 2019 WL 3729563 (S.D. Ga. Aug. 7, 2019).

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED**, (doc. no. 10), and that this case be **DISMISSED** without prejudice in its entirety and **CLOSED**.

SO REPORTED and RECOMMENDED this 14th day of July, 2022, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA